OPINION OF THE COURT
Balkin, J.
The police arrested the defendant inside his home. They did not have a warrant, the defendant had not consented to their entry, and the defendant had remained inside his home since before the police arrived. The straightforward issue on this appeal is whether the Supreme Court erred in denying that branch of the defendant’s omnibus motion which was to suppress the statement he made in his home after he was arrested. We conclude that precedent from the United States Supreme Court and the New York Court of Appeals requires that we reverse the judgment and remit the matter to the Supreme Court, Queens County, for a new trial.
According to the testimony at the defendant’s suppression hearing, the police received a call regarding a “possible sexual assault in progress” at a specified address. They went to that address and saw the complainant waiting for them outside. After she told them that her cousin’s boyfriend had assaulted her in a basement apartment at that address, the police, accompanied by the complainant, went to the door of that apartment and knocked. When the defendant opened the door, the police asked the complainant if he was the person who had assaulted her, and she said yes. The defendant, who had never left the apartment, even partially, tried to close the door, but the police pushed their way inside and handcuffed him. Minutes later, still inside the apartment, the defendant made an inculpatory statement.
*149 After the defendant was indicted, he moved to suppress his statement, and the Supreme Court held a suppression hearing. At the conclusion of that hearing, the court ruled, and reasoned, as follows:
“Here’s where I will hold this is not a Payton violation. The door opened. [The defendant] was visible in the doorway, the open doorway of the apartment, and identified almost instantaneously by [the complainant] as the alleged perpetrator of the criminal act.
“Okay. Once this happened [the defendant] attempted to close the door unsuccessfully. It’s akin to the hot pursuit exception to the Payton rule. A suspect fleeing the police cannot go into the home in order to avoid apprehension. That’s what happened here in my opinion. That’s why it’s not a Pay-ton violation.
“You had probable cause when the complainant said, ‘that’s him.’ And, basically, he was — [the defendant] was visible to the officers by virtue of the open door. And the officers had the right to go in without a warrant to effect his arrest based upon the hot pursuit. He started closing the door. The officers could not allow that to happen.
“If you want to go under [the] [r]ubric [of] exigency, once identified there was flight, the officers had a right to pursue. That created exigency at that moment.”*
The court also held that the police had not subjected the defendant to custodial interrogation. The court, therefore, denied that branch of the defendant’s omnibus motion which was to suppress his statement.
The branch of the defendant’s omnibus motion which was to suppress his statement should have been granted.
In Payton v New York (445 US 573 [1980]), the United States Supreme Court announced a clear and easily applied rule with *150 respect to warrantless arrests in the home: “the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant” (445 US at 590). The rule under the New York Constitution is the same (see NY Const, art I, § 12; People v Levan, 62 NY2d 139, 144 [1984]). Payton and Levan require suppression of the defendant’s statement under the clear, undisputed facts of this case.
Certainly, if the defendant’s encounter with the police had begun outside his home, or even on the threshold of it, the defendant could not have avoided arrest by fleeing into his home (see United States v Santana, 427 US 38, 43 [1976]). But, contrary to the hearing court’s characterization, the defendant’s attempt to close his door was not “akin” to “fleeing”; he had never left the constitutionally protected interior of his home in the first place, even partially, so he did not flee “into” his home (see People v Levan, 62 NY2d at 144-145; cf. People v Reynoso, 2 NY3d 820, 821 [2004], affg 309 AD2d 769, 770 [2003]).
Our dissenting colleagues and the People rely on United States v Santana for the proposition that the doorway of a home is a “public place” for the purposes of a Fourth Amendment analysis (427 US at 42). The defendant in Santana was not inside her home when the police arrived and announced their presence; she “was standing directly in the doorway — one step forward would have put her outside, one step backward would have put her in the vestibule of her residence” (id. at 40 n 1). Santana retreated from the threshold into her home and the police followed and arrested her inside. The United States Supreme Court held, first, that Santana, by standing in the “threshold,” was in a public place for purposes of the Fourth Amendment and, second, that she could not avoid a warrantless arrest by retreating into her house after the police arrived (id. at 42). In other words, Santana could not escape a warrantless arrest by traveling from the constitutionally public space of the threshold to the constitutionally private space of the interior of her home. The undisputed facts here differ from the facts in Santana, and the differences are legally significant in light of Payton, which was decided after Santana.
First, it is clear that, unlike the defendant in Santana, the defendant here was always in the interior of his home. This distinction is determinative. Four years after deciding Santana, the United States Supreme Court decided Payton and its companion case, Riddick v New York. In Payton and Riddick, *151 the Court adopted a more restrictive rule with respect to warrantless arrests than might have been supported under the broad language the Court had employed in Santana. Specifically, when the Court held in Santana that the defendant, who had been standing in the threshold of her home, was in a “ ‘public’ place” (427 US at 42), it reasoned that she was “not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house” (id.). Before Payton and Riddick were decided, that reasoning (except for “touch”) might reasonably have been extended to justify a warrantless arrest of a person, like the defendant here, seen standing near an open door but entirely within his or her home. But, in Payton and Riddick, the Court drew a line: however visible or audible a person may be inside his or her home, the police are not permitted to cross the “threshold” of that home without a warrant, in the absence of exigent circumstances (Payton v New York, 445 US at 590). In Riddick, for example, the police knocked on the door to Rid-dick’s house, and Riddick’s son opened it. Through the open door, the police saw Riddick sitting on his bed. They entered his home and arrested him. The Court held that because Riddick was at all times inside his home, the police could not enter without a warrant, despite the fact that they could see him through the open door (id. at 578, 603).
In People v Levan (62 NY2d 139 [1984]), our Court of Appeals recognized the limit Payton and Riddick had placed on the broad Santana language. In Levan, a neighbor knocked on the defendant’s door and, when the defendant opened it, the police, who were waiting nearby, rushed inside and arrested the defendant. The Court of Appeals expressly rejected the People’s reliance on Santana. It held that Payton required suppression and that Santana was inapposite: “Santana furnishes no support for the actions of the police in this case, given the Supreme Court’s pronouncement in Payton that ‘the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant’ ” (62 NY2d at 145, quoting Payton, 445 US at 590). Put differently, even though the defendant in Levan, who was entirely inside his apartment, may have been “not merely visible to the public but ... as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house” (427 US at 42), the Fourth Amendment protected him from a warrantless arrest. Our col *152 leagues criticize the “literal interpretation of the term ‘threshold’ ” (infra at 155), but that literal interpretation is required by the United States Constitution. As the United States Supreme Court said in Payton, “[t]he Fourth Amendment protects the individual’s privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home” (445 US at 589).
Our dissenting colleagues contend that in People v Reynoso (2 NY3d at 821), the Court of Appeals upheld an arrest “in the doorway” of a defendant’s home (infra at 154), but that case only highlights the constitutional significance of the literal meaning of “threshold.” In Reynoso, the police testified that the defendant had voluntarily left his home upon their request that he come outside (309 AD2d 769, 770). The defendant, by contrast, contended that, after he “put [his] head[ ] outside the door jamb to see who was calling at this late hour” (309 AD2d at 771 [McGinity, J., dissenting]), the police reached in and pulled him out. Thus, in both versions of what had transpired, the defendant had voluntarily emerged, at least in part, from his home. By doing so, he surrendered the enhanced constitutional protection of the home. In this case, by contrast, the undisputed evidence is that the defendant did not leave his home at all. Accordingly, Reynoso did not blur the clear constitutional demarcation, or “firm line” (Payton v New York, 445 US at 590), that the Supreme Court and the Court of Appeals recognized in Payton and Levan.
Our dissenting colleagues would replace that firm line with an inquiry into a suspect’s “intentions and expectations” (infra at 156). That amorphous inquiry would depend on how far the defendant opened the door, how far into the home the police intruded without a warrant, and how long the police have had probable cause to arrest the defendant. Even aside from the fact that the approach proposed by our dissenting colleagues runs afoul of the constitutional significance accorded the physical boundaries of the home, it cannot be practically applied. For example, how far does the door have to be opened to constitute a surrender of Fourth Amendment protection? How far into the home may the police intrude? As far as they can see? As far as they can reach? And, how long after the police obtain probable cause may they enter the home without a warrant? The inquiry propounded by our dissenting colleagues is not practical for anyone, because it provides guidance neither to the police, who *153 seek to enforce the law, nor to citizens, who have the “right. . . to be secure in their . . . houses . . . against unreasonable searches and seizures” (US Const Amend IV).
The rule announced in Payton and applied in Levan is clear and easily understood: a person enjoys enhanced constitutional protection from a warrantless arrest in the interior of the home, but not on the threshold itself or the exterior. As the United States Supreme Court recently observed, “[o]ne virtue of the Fourth Amendment’s property-rights baseline is that it keeps easy cases easy” (Florida v Jardines, 569 US —, —, 133 S Ct 1409, 1417 [2013]). The defendants in Riddick and Levan, and the defendant here, were inside their homes and thus entitled to that enhanced constitutional protection; the defendant in Santana, who was merely standing in the threshold, was not.
In sum, because the police arrested the defendant in his home, without a warrant and in the absence of exigent circumstances, the arrest violated the Fourth Amendment to the United States Constitution and article I, § 12 of the New York Constitution. That branch of the defendant’s omnibus motion which was to suppress his resulting statement should therefore have been granted. Also, inasmuch as the evidence was not overwhelming, the error could not be harmless beyond a reasonable doubt (see People v Crimmins, 36 NY2d 230, 237 [1975]), so the judgment must be reversed and a new trial ordered.
In light of our determination, we need not address the defendant’s remaining contentions.
Accordingly, the judgment is reversed, on the law, that branch of the defendant’s omnibus motion which was to suppress his statement to law enforcement officials is granted, and a new trial is ordered.

 Inasmuch as the hearing court did not ground its ruling on any other finding of “exigency,” such as the presence of a baby or the need to preserve evidence, those issues did not “adversely affect[ ] the appellant” (CPL 470.15 [1]). Consequently, this Court is jurisdictionally barred from considering them on the defendant’s appeal (see CPL 470.15 [1]; People v Concepcion, 17 NY3d 192, 195 [2011]; People v LaFontaine, 92 NY2d 470, 473-474 [1998]; People v Harris, 93 AD3d 58, 66 [2012], affd 20 NY3d 912 [2012]).